## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

**JAMES MOBLEY,**

    **Plaintiff,**

      **v.**

**CONTINENTAL CASUALTY CO.,**

    **Defendant.**

</td><td>

**Civil Action No.  04-0287 (JDB)**

</td></tr>
</table>

## MEMORANDUM OPINION

In this action, plaintiff James Mobley seeks to recover benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.  Presently before the Court is a motion for summary judgment filed by defendant Continental Casualty Co. ("Continental" or "defendant").  For the reasons that follow, the Court will deny defendant's motion without prejudice.

## BACKGROUND[1]

Continental has a group disability policy ("policy") that it issued to Columbia Hospital for Women Foundation, Inc. and Subsidiary Corporations ("Columbia Hospital").  Pursuant to this

---

[1] Pursuant to Local Civil Rule 7(h) every summary judgment motion must be accompanied by a statement of material facts as to which there is no genuine issue.  The purpose of LCvR 7(h) is to "assist[ ] the district court to maintain docket control and to decide motions for summary judgment efficiently and effectively." Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150 (D.C. Cir.1996).  Defendant failed to accompany its motion with such a statement and instead merely labeled the Background section of its memorandum, "Statement of Material Facts."  This is not adequate.  Although this Court will deny defendant's motion on other grounds, counsel are reminded that they are required to follow all local rules when submitting motions to this Court.

policy, Continental agreed to pay monthly benefits for Insured Employees (including plaintiff) who suffer a "Total Disability."  See CCC000020.  Total Disability is a term of art that has two different definitions in the policy, depending on the length of time that has passed since the injury or sickness that triggered the policy.  After a 180-day Elimination Period has passed following the time of the injury or sickness, the policy calls for a twenty-four month Employee Occupation Period.  See CCC000014.  During this latter period of time, an Insured Employee is considered Totally Disabled when the employee, because of injury or sickness, is:

> (1) continuously unable to perform the substantial and material duties of his regular occupation:
> (2) under the regular care of a licensed physician other than himself; and
> (3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

CCC000025.  After this twenty-four month Employee Occupation Period, the definition of Total Disability, and hence the right of the Insured Employee to receive benefits, changes to mean that an employee, because of injury or sickness, is:

> (1) continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
> (2) under the regular care of a licensed physician other than himself.

Id.

On or about March 12, 1998, plaintiff's employer, Columbia Hospital, filed an Initial Claim Report with Continental indicating that plaintiff had a herniated disc suffered during a fall at home and at work on August 15, 1997.  See CCC 000142-145, March 6, 1998 Initial Claim Report.  Plaintiff had worked as a Linen Distribution Aide for Columbia Hospital, which involved "major physical demands."  Id.  The Initial Claim Report included a statement by plaintiff's attending physician, Francyne O. Anderson, M.D. ("Dr. Anderson"), who had been

treating plaintiff bimonthly since the injury in 1997.  Id.  According to Dr. Anderson, plaintiff

had a "herniated disc," and complained of "pain, paraethesias, weakness of [right] leg and unable

to walk."  Id.  Dr. Anderson rated plaintiff's physical impairment as a "Class 5", the highest

available rating, which means "[s]evere limitation of functional capacity; [i]ncapable of minimal

(sedentary) activity."  Id.  She restricted plaintiff to "no pushing, no pulling, lifting > 10 lbs," and

stated he should avoid sitting or standing for more than 20 minutes.  Finally, she indicated he

could not go back to his manual labor occupation, and was not sure when plaintiff could return to

trial employment.  Id.  She did state that she believed that plaintiff would need to be "retrained in

an entire[ly] different occupation."  Id.

On or about September 29, 1999, Continental received another Physician's Statement

Shortly after receiving the Initial Claim Report, Continental interviewed plaintiff on

March 23, 1998.  See CCC 000155-56, Claimant Interview notes.  In that interview, plaintiff

indicated he was in "continuous pain" and sometimes his left leg would "give out on him" while

walking.  Id.  Furthermore, plaintiff said it would take him about "3 hours everyday to straighten

up before he can walk upright."  Id.  Soon after the interview, Continental approved plaintiff's

claim, and in doing so found that he was totally disabled as defined under the Employee

Occupation Period.  See CCC 000150-51, March 26, 1998 Letter.  Continental determined that

payments for the period of August 16, 1997 to February 11, 1998 satisfied the Elimination Period

in the policy, and that subsequent benefits paid to plaintiff would be part of the twenty-four

month Insured Employee Occupation Period, which would run until February 11, 2000.  Id.

On or about September 29, 1999, Continental received another Physician's Statement

from Dr. Anderson.  See CCC000140-41.  She repeated that plaintiff suffered a "herniated disc"

complicated by "paresthesia [and] weakness of legs" and that his condition was chronic pain.  Id.

She indicated that plaintiff was being treated with pain medication, physical therapy, muscle relaxants and epidural blocks.  Id.  Dr. Anderson's prognosis for plaintiff was "poor" indicating that "even minor activity exacerbat[ed] pain."  Id.  She listed plaintiff's physical limitations: "avoid pushing, pulling lifting 10lbs [;] avoid repetitive bending[; and] avoid prolonged sitting or standing."  Id.  Finally, Dr. Anderson noted that around the time of her examination, plaintiff had suffered a re-injury from "minor physical exertion" and that his "legs gave out."  Id.

Based on this Physician's Statement, and specifically Dr. Anderson's statement that plaintiff should "avoid prolonged sitting or standing," on January 14, 2000, Continental informed plaintiff that he was capable of performing occupations in the "light work category" and therefore would not qualify as Totally Disabled at the end of the Employee Occupation Period.  See CCC000104-05.  In particular, Continental concluded, based on Dr. Anderson's report and plaintiff's educational background, that he could work as a "Telephone Solicitor, Night Auditor, Customer Service Representative and Surveillance System Monitor."  Id.  Continental noted that the listed jobs would permit "frequent positional changes" and he could utilize a headset which would permit him to "alternate sitting and standing."  Id.  Continental informed plaintiff that he could petition for reconsideration of the decision and that Continental would accept additional medical information.  Id.

Dr. Anderson sent a letter to Continental on or around February 10, 2000, that informed Continental that plaintiff has been "disabled completely since 1997."  CCC000101.  She noted that she was trying to allow plaintiff "to try to work with severe restrictions."  Id.  However, Dr. Anderson noted that plaintiff's medical condition would not even permit that.  Id.  On March 9, 2000, Dr. Anderson sent another letter to Continental which sought to "correct a mistake" from

her September 1999 Physician's Statement.  See CCC000095.  She stated that she was incorrect in stating plaintiff's physical limitations.  Id.  Instead, Dr. Anderson reiterated her February 10, 2000 letter that plaintiff has been "disabled completely since 1997."  Id.

Plaintiff subsequently sought reconsideration of Continental's decision to deny future benefits.  Continental indicated that it received Dr. Anderson's letter.  See CCC000095.  It also said that the information from Dr. Kay[2] did not "indicate why [he] could not perform the flexible sedentary jobs" previously identified.  Id.  Continental also stated that it put a call into Dr. Anderson regarding her "change in her decision" but that she did not return the call.  Id.  Therefore, Continental determined it would "maintain [its] previous position that you are not totally disabled from performing some other occupation."  Id.  Continental then referred the matter to the Appeals Committee.  Id.  The Appeals Committee concluded that plaintiff was unable to perform the duties of his old job, but that "there is a lack of medical evidence to support that you are functionally impaired to the extent that you are precluded from performing a sedentary occupation."  CCC000091.  As such, plaintiff's case was remanded to the claims unit for further investigation.  Id.

Continental's claims unit obtained further medical information on plaintiff.  First, they acquired a report from Charles J. Azzam, M.D. ("Dr. Azzam"), who performed a neurological and musculoskeletal examination on plaintiff in August 1999.  See CCC000067, August 12,

---

[2]  In a subsequent letter to plaintiff's counsel, defendant acknowledged that there was no information from a "Dr. Kay" and that the reference should have read "Dr. Anderson."  See CCC000051.

1999 Dr. Azzam report, page 2.[3]  Dr. Azzam, found that plaintiff had limited range of motion in

his spine with "aggravation of pain to back extension."  Id.  He also noted that plaintiff's

symptoms were caused by "lumbar disc herniation," which is similar to Dr. Anderson's diagnosis,

and Dr. Azzam recommended a lumbar MRI.  Id.

Continental also received reports from a physical therapist, David Carrington, who saw

plaintiff in February 2000.  See CCC000079.  Mr. Carrington documented plaintiff's condition

and recommended physical therapy.  Id.  In an interim report, dated one month later, Mr.

Carrington described plaintiff as "better."  CCC000077.  Beyond these two reports, according to

Continental's own documents, Mr. Carrington informed Continental in July 2000 that although

plaintiff had "improved" there were "good and bad visits."  CCC000058.  Mr. Carrington also

informed Continental that plaintiff has "lots of pain" and that he learned plaintiff had to return to

the hospital after a visit with him.  Id.  Mr. Carrington then informed Continental that after seeing

plaintiff since February 2000, he "could not comment on [plaintiff's] ability to handle sed[entary]

job."  Id.

Finally, Continental arranged for plaintiff to undergo an independent medical

examination with a Montague Blundon, M.D. ("Dr. Blundon") on August 9, 2000.  See

CCC000116-119, CCC000139.  Plaintiff has indicated that Dr. Blundon's examination lasted

only 15 minutes and that Dr. Blundon received $850 from defendant for his report, but plaintiff

does not provide any citation to the record for this assertion, nor an affidavit.  See Pl. Opp'n at

11.  According to Dr. Blundon, plaintiff walks without aid of a walker or cane but has a "slightly

---

[3]  The record only contains page two of  the August 12, 1999, report of Dr. Azzam.  Both
parties are silent as to what is stated on the first page.

unsteady gait." CCC000118.  He also indicated that plaintiff has "full range of motion of his

lumbar spine" and "full range of motion of his hips, knees, and ankles, but his strength is

decreased 4 out of 5."  Id.  Dr. Blundon concluded that plaintiff did not have a "ruptured disc"

and had "minimal residual dysfunction" from the "cerebrovascular accident."  Id.  He found that

the MRI showed a "protruding disc" but not evidence of a "true rupture."  Finally, in response to

specific questions from Continental, Dr. Bloudon stated that after examining plaintiff on that one

occassion, "Mr. Mobley is capable of full-time work for some type of light duty or sedentary

work."  Id.  Dr. Anderson received Dr. Bloudon's report and indicated that she disagreed with his

conclusion.  See CCC000115.  Based upon Dr. Bloudon's report, Continental on September 13,

2000, denied plaintiff's appeal, and maintained its position that plaintiff was not "totally

disabled."  CCC000112.

## LEGAL STANDARD

### I.    Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its

motion by "informing the district court of the basis for its motion, and identifying those portions

of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact."  Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## ANALYSIS

I.      **Review of Continental's Termination of Benefits**

Plaintiff seeks review, pursuant to § 1132(a)(1)(B) of ERISA, of Continental's decision to terminate his benefits.  In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court held that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115.  If such discretion is found, the Supreme Court directed district courts to apply the more deferential arbitrary and capricious standard of review to the decision to deny benefits.  Id.  Firestone's employee benefit plan provided severance benefits for employees "if released because of a reduction in work force or if ... physically or mentally unable to perform [the] job."

Id. at 105-06.  The Court held that those provisions did not require that the administrator's eligibility determinations be given deference, and hence applied a de novo standard of review. Id. at 111-12.

To determine whether an administrator has discretion, the D.C. Circuit has instructed courts to review the plan documents themselves.  See Block v. Pitney Bowes, Inc., 952 F.2d 1450, 1453-54 (D.C.Cir.1992).  "(I)t ... need only appear on the face of the plan documents that the fiduciary has been given (the) power to construe disputed or doubtful terms -- or to resolve disputes over benefits eligibility -- in which case the trustee's interpretation will not be disturbed if reasonable."  Id.  It is also the case, however, that courts should not look for any specific "magic words" such as "discretion."  Id. at 1453.  Instead, the policy must simply contain a clear intent to confer the administrator with discretionary authority.  See Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 268-69 (4th Cir. 2002); Brown v. Seitz Foods, Inc. Disability Benefit, 140 F.3d 1198 (8th Cir. 1998) ("The proper way to secure deferential court review of an ERISA plan is through express discretion-granting language").  It follows then that any ambiguity in the language of the plan "is construed against the drafter of the plan, and it is construed in accordance with the reasonable expectations of the insured."  Gallagher, 305 F.3d at 269.

In this case the policy states in relevant part:

**WRITTEN PROOF OF LOSS**.  Written proof of loss must be furnished to Us within 90 days after the end of a period for which We are liable.  If it is not possible to give the proof within 90 days, the claim is not affected if the proof is given as soon as reasonably possible.  Unless the Insured Employee is legally incapacitated, written proof must be given within 1 year of the time it is otherwise due.

**TIME OF PAYMENT OF CLAIM**.  Benefits will be paid monthly immediately
after We receive due written proof of loss.

Def. Mem., Ex. 1 at 12.  Defendant contends that the language "due written proof of loss" grants

it the discretion to determine eligibility for benefits.

To begin with, although an administrator has the authority to deny a claim, that fact alone

does not confer discretion.  See MacMillian v. Provident Mut. Life Ins. Co. of Philadelphia, 32 F.

Supp. 2d 600, 609 (S.D.N.Y 1999).  Furthermore, simply because the administrator requires

some proof of eligibility, that does not confer discretion upon the administrator and lead to

deferential review.  See Fritts v. Fed. Nat. Mortgage Assoc., 236 F.3d 1, 5 (D.C. Cir. 2001).  The

D.C. Circuit in Fritts noted that because every insurance policy has some requirement of proof of

eligibility, if such a proof requirement was sufficient to apply the deferential standard, it would

be applied in every case.  Id.  Therefore, the mere fact that Continental denied plaintiff's claim, or

has a requirement of proof of eligibility, is not determinative of the standard of review.

Instead, the Court must look to the language in the policy, and whether it conveys a clear

intent to grant discretion.  Here, defendant argues that the language "due written proof"

sufficiently confers discretion because the term "due" operates as a modifier on the type of proof

needed.  See Def. Mem. at 15.  The D.C. Circuit has not had the opportunity to address whether

this policy language alone ("due written proof") is sufficient to confer discretion.  However,

several courts in other circuits have examined this exact language in assessing whether to review

a denial of benefits under the de novo standard or the arbitrary and capricious standard.

Although the results from these courts has been mixed, the majority of courts have found that the

language "due written proof," alone, is not sufficient to confer discretion on a plan administrator.

-10-

In Seitz Foods, Inc. Disability Benefit, 140 F.3d at 1200, the Eighth Circuit interpreted a disability plan very similar to the one before this Court. That court found the language "to be considered disabled" and "due . . . proof of loss" to be "typical insurance" language that did not trigger the deferential review standard. Id. (quoting Ravenscraft v. Hy-Vee Employee Benefit Plan & Trust, 85 F.3d 398, 402 n.2 (8th Cir. 1996)). Similarly, in Williams v. Continental Cas. Co., 138 F. Supp. 2d 998, 1007-10 (M.D. Tenn. 2001), the district court found that language identical to that in this case did not trigger discretionary review. In particular, the court found that the term "due written proof" did not create any "qualitative standard of proof" and, moreover, the term "due written proof" was only found in the provision of the policy discussing the timing of claim payments. 138 F. Supp. 2d at 1010; see also Wolff v. Continental Cas. Co., 2004 WL 2191579, *12 (N.D. Ill. Sept. 28, 2004) ("due written proof" does not grant discretion); Ransdell v. Continental Cas. Co, 2002 WL 3164020 (D. Kan. Nov. 20, 2002) (same).

On the other hand, in Leeal v. Continental Cas Co., 17 Fed Appx. 341 (6th Cir. 2001), language identical to that in this case was found to confer discretion and thus merit the arbitrary and capricious standard of review. Subsequently, a district court in the Sixth Circuit, Carpenter v. Continental Cas. Co., 254 F. Supp. 2d 730, 738 (S.D. Ohio. 2002), followed Leeal and found that similar language conferred discretion. However, although the Carpenter court found that it was bound by Leeal, it noted that if it were addressing this language "as a matter of first impression" it would likely find "due written proof" not sufficient to confer discretion. 254 F. Supp. 2d at 737-38. Finally, in Layman v. Continental Cas. Co., 1999 U.S. Dist. LEXIS 2802, *17 (E.D. Mich. Feb. 2, 1999), the district court also applied the arbitrary and capricious standard to identical language, finding it was bound by the Sixth Circuit decision in Perez v. Atena Life

-11-

Ins. Co., 150 F.3d 550, 555 (6th Cir. 1998).  The court in Layman did not offer any independent

analysis of whether the words "due written proof," confer discretion, and instead relied solely on

the Perez decision.  It is worth noting, however, that in Perez the policy language was more

robust than that before this Court and before the court in Layman.  It read:  " [Atena] shall have

the right to require as part of the proof of claim satisfactory evidence ... that [the claimant] has

furnished all required proofs for such benefits."  Perez, 150 F.3d at 555.  Furthermore, the D.C.

Circuit has noted that the Perez decision has been "rejected" by other circuits.  Fritts, 236 F.3d at

5 n.3 (citing Herzberger v. Standard Ins. Co., 205 F.3d 327, 332 (7th Cir.2000); Kinstler v. First

Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir.1999); Kearney v. Standard Ins. Co.,

175 F.3d 1084, 1089-90 (9th Cir.1999) (en banc)).

        Examining the entirety of the policy at issue in the case, and particularly the specific

language allegedly conferring discretion, this Court agrees with those decisions that have found

the language "due written proof" insufficient to establish a clear intent to confer discretion upon

the plan administrator.  In reaching that decision, the Court is reminded of the plain meaning of

the term "due," which according to defendant operates as the requirement of a "qualitative

threshold of proof."  See Def. Mem. at 15.  Webster's Third New International Dictionary defines

the word "due," when it is used as an adjective, as:

> 1:  owed or owing as a debt.  2: owed or owing as a necessity. . . . 3b: requisite or
> appropriate in accordance with accepted notions of what is right, reasonable,
> fitting or necessary. . . . 4a: satisfying or capable of satisfying a need, requirement,
> obligation or duty: Adequate, sufficient.

This definition, by itself, is not particularly helpful as it could support, at least somewhat, each

party's construction of the word "due."  The definition uses "due" to connote the timing of

something owed, but it can also be said that the word "due" has a certain qualitative character --

i.e., definition "4a: . . . adequate."  That supports defendant's position that the word "due" means

"satisfactory."  <u>See</u> Def. Mem. at 15.  Of course, the definition of a word in the abstract is rarely

helpful, and instead the term must be read, and thereby defined, within the context that it is used.

In the policy at issue here, the word "due" appears twice in the provisions of the policy

relied upon by defendant.  It first appears in a paragraph entitled "Written Proof of Loss."  <u>See</u>

CCC000023.  There, the policy reads "written proof must be given within 1 year of the time it is

otherwise due."  <u>Id.</u>  There can be no doubt that, in this sentence, the word "due" is only a timing

reference, meaning "owed," so that the sentence could also read "written proof must be given

within 1 year of the time it is otherwise [owed]."

The word "due" appears again in the very next paragraph of the policy, entitled "Time of

Payment of Claim."  <u>Id.</u>  In this paragraph, the word "due" appears in the following sentence:

"[b]enefits will be paid monthly immediately after We receive due written proof of loss."  Here,

the proper construction of the word "due" is less clear.  Defendant argues that "due" here is used

to describe the quality of the proof, so that a synonymous phrase would be "satisfactory written

proof."  <u>See</u> Def. Mem. at 15.  This suggestion is not unreasonable, and other courts have used

the terms "due" and "satisfactory" interchangeably.  <u>See</u> <u>Bollenbacher v. Helena Chemical Co.</u>,

926 F. Supp. 781, 787 (N.D. Ind.1996).

However, the Court must define the word "due" in the full context of the policy language

in which the word is used,  and in doing so, defendant's suggested definition is less persuasive.

In particular, under defendant's definition the word "due," used in sequential sentences, would

have two different meanings.  In one sentence it would describe when the proof is owed, but in

the next it would describe the quality of the proof needed.  Although this is not entirely

unreasonable or implausible, this position becomes less tenable given that both provisions in

which the word "due" appears refer to the timing of the submission of proof and subsequent

claim payments.  <u>See</u> CCC000023.  There is no mention, in either of the provisions, of any

requirements as to the sufficiency or quality of the proof an insured must submit in order to

receive claim payments.  <u>Id.</u>  Indeed, the second reference is under a heading expressly dealing

with timing.  Hence, the Court concludes that the better meaning of the word "due," as it is used

in the policy in this case, refers to the timing by which proof must be submitted to receive claim

payments.  At the very least, to receive deferential review, Continental bears the burden of

showing an unambiguous intent on the face of the policy to confer discretion, and given the

language in this policy, Continental falls well short of satisfying that burden.  Thus, the Court

must review Continental's denial of plaintiff's claim for benefits under the de novo standard of

review.

## II.    De Novo Review

Having decided to apply de novo review, the Court must also determine the scope of that

review.  The D.C. Circuit has held that "[c]ourts review ERISA-plan benefit decisions on the

evidence presented to the plan administrators, not on a record later made in another forum."

<u>Heller v. Fortis Benefits Ins. Co.</u>, 142 F.3d 487, 493 (D.C. Cir. 1998) (internal citations omitted).

Currently before the Court is defendant's motion for summary judgment, which includes exhibits

from Continental's files.  Defendant has alluded to these exhibits as the "administrative record,"

<u>see</u> Def. Mem. at 17, 19.  However, a formal administrative record has not been lodged with the

Court, nor has defendant proffered to the Court that the multiple exhibits attached to its motion

-14-

for summary judgment comprise the entirety of the evidence before the plan administrators at the time of the decision on plaintiff's claim for benefits that is under review.  Instead, defendant only attaches one affidavit that declares "exhibit 2" was a business document.  <u>See</u> Def. Mem, Declaration of Nancy Deskins.  Without more, the Court cannot be assured that its review is based on the entire appropriate record.[4]

Beyond such concerns about the full and complete administrative record, the parties have not argued to the Court how they believe the administrative record in this case should be assessed applying the de novo standard.  Instead, defendant's motion focused exclusively on the arbitrary and capricious standard of review, and plaintiff principally offered reasons why defendant's motion should be denied.  It may also be more appropriate for the Court to resolve this dispute under Fed. R. Civ. P. 52, which directs the Court to make findings of fact and law, rather than under Fed. R. Civ. P.  56, which turns on whether there is a genuine issue as to any material fact. <u>See</u> <u>Neumann v. Prudential Ins. Co. of Am.</u>, 367 F. Supp. 2d 969, 980 (E.D. Va. 2005) (resolving denial of benefit claim under ERISA pursuant to Rule 52 when Court found disputed material issues of fact).  Given these concerns, the Court will deny without prejudice defendant's motion for summary judgment and schedule a status conference to addresses the issues highlighted by the Court.

---

[4]  Beyond the uncertainty as to the content of the administrative record, if the documents currently before the Court are part of the administrative record, there are issues with these documents that must be addressed.  In particular, many of the documents, especially Dr. Anderson's records, are illegible.  Furthermore, some of the documents recount conversations between Continental and individuals involved in plaintiff's treatment.  Presumably, Continental considered those conversations, and not merely the notes of these conversations, in assessing whether plaintiff was disabled, but the record is not clear on that point either.  The Court must ensure the administrative record is an accurate compilation of what was before Continental at the time of the decision under review.

## <u>CONCLUSION</u>

For the reasons stated above, the Court will deny without prejudice defendant's motion

for summary judgment.  A separate order is issued on this date.


                                                                                __/s/ John D. Bates_____

                                                                  JOHN D. BATES
                                               United States District Judge


Dated:   __August 11, 2005_____


Copies to:

Robert Joel Zakroff
ZAKROFF & ASSOCIATES, P.C.
4337 Montgomery Avenue
Bethesda, MD 20814
(301) 986-5770
Fax : (301) 986-4119
Email: zaklaw@erols.com
                *Counsel for plaintiff*

Michael R. McCann
FUNK & BOLTON, P.A.
36 South Charles Street
Baltimore, MD 21201-3111
(410) 659-7700
Fax : (410) 659-7773
Email: mmccann@fblaw.com
                *Counsel for defendant*