**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JAMES MOBLEY,**

**Plaintiff,**

**v.**

**CONTINENTAL CASUALTY CO.,**

**Defendant.**

**Civil Action No. 04-0287 (JDB)**

## MEMORANDUM OPINION

In this action, plaintiff James Mobley seeks to recover benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. On August 11, 2005, the Court denied defendant Continental Casualty Co.'s ("Continental") motion for summary judgment. See Mobley v. Continental Casualty Co., Civil Action No. 04-0287 (D.D.C. Aug. 11, 2005) (memorandum opinion) (hereinafter "Mobley Mem. Op."). Presently before the Court is Continental's motion for reconsideration of that opinion. For the reasons that follow, the Court will deny Continental's motion and will review the merits of the case under Federal Rule of Civil Procedure 52. Based on that review, judgment will be entered in favor of Continental.

## BACKGROUND

The facts and history of this case prior to Continental's motion for summary judgment are set forth in detail in the Court's previous decision, and will not be repeated here. See Mobley Mem. Op. at 1- 10. Continental now asks the Court to reconsider its August 11, 2005 decision denying Continental's motion for summary judgment, arguing that: (1) the exhibits previously submitted to the Court constitute the full and formal administrative record; (2) all portions of the

administrative record are in their original and authentic condition, and have not been tampered with; (3) those portions of the administrative record that are illegible were illegible when Continental initially received them; (4) Continental did not include additional evidence of oral conversations because "the record had closed on September 28, 2000" and it could not "build[] upon a closed record"; and (5) the Court was mistaken to assert that Continental had not considered the de novo standard of review, as evidenced by footnote six of Continental's memorandum in support of summary judgment. See Def.'s Mot. Reconsideration at 1-3. Continental did not submit any new evidence or legal arguments, cure its error under Local Civil Rule 7(h), or address the Court's intimation that Federal Rule of Civil Procedure 52 may be the more appropriate procedure for resolution of this case. Plaintiff makes the same arguments in opposition to Continental's motion to reconsider as he made at the earlier summary judgment phase. See Pl.'s Mem. Opp'n Def.'s Mot. Reconsideration.

**LEGAL STANDARDS**

The Federal Rules of Civil Procedure do not expressly address motions for reconsideration. Lance v. United Mine Workers for Am. Pension Trust, 2005 WL 2766073 at *2 (D.D.C. 2005). It is well-established that such motions are ordinarily analyzed as motions to clarify, alter or amend judgment under Fed. R. Civ. P. 59(e). Id. (citing Piper v. DOJ, 312 F. Supp. 2d 17, 20 (D.D.C. 2004)); see also Toussaint v. Howard Univ., Civil Action No. 03-1395 at 2-3 (D.D.C. Nov. 8, 2005) (memorandum opinion) ("Toussaint Mem. Op."). A motion for reconsideration of a previous judgment will not lightly be granted. A litigant will prevail on a Rule 59(e) motion only if the litigant can demonstrate: (1) "an intervening change in controlling law"; (2) new evidence; or (3) a pressing need to "correct clear error or prevent manifest

injustice." Toussaint Mem. Op. at 3 (citing Ciralsky v. Cent. Intelligence Agency, 355 F.3d 551, 671 (D.C. Cir. 2004); Lance, 2005 WL 2766023 at *2; Piper, 312 F. Supp. 2d at 21). A Rule 59(e) motion is neither a vehicle for litigants to re-argue facts and theories upon which the reviewing court has already ruled, Toussaint Mem. Op. at 3 (citing Cooper v. Dep't of Justice, 2005 WL 670296 at *2 (D.D.C. 2005) (unreported disposition); New York v. United States, 880 F. Supp. 37, 38 (D.D.C. 1995)), nor an opportunity for litigants to present theories or arguments that could have been advanced earlier, but were not, id. (citing Kattan v. District of Columbia, 995 F.2d 274, 276 (D.C. Cir. 1993)). Although the amendment of a previously entered order is somewhat extraordinary, a district court enjoys wide discretion when it considers a Rule 59(e) motion. Id. (citing Cooper, 2005 WL 670296 at *2; Lance, 2005 WL2766023 at *2).

Where, as here, the party moving for reconsideration is asking the court to reconsider a judgment regarding the party's previous motion for summary judgment, the court may, in its discretion, treat the motion for reconsideration as a renewed motion for summary judgment under Federal Rule of Civil Procedure 56(c). See Mobley v. Continental Casualty Co., Civil Action No. 04-0287, dkt. sht., (D.D.C. Aug. 26, 2005) (minute order). Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating that no genuine dispute of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

To determine whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true, and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Nevertheless, the non-movant must demonstrate more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. The moving party, in contrast, need only point to the absence of evidence proffered by the non-movant. Celotex, 477 U.S. at 322. Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find . . . [in the non-movant's favor]." Anderson, 477 U.S. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## ANALYSIS

In order to receive long term disability benefits under Continental's plan, plaintiff must be "totally disabled." Under the terms of the plan, plaintiff is required to show that he is both "[c]ontinuously unable to engage in any occupation for which [he is] or become[s] qualified by education, training, or experience; and [is] [u]nder the regular care of a licensed physician other than [himself]." CCC000109.[1] The second prong of this requirement is uncontested, but the parties disagree as to the first prong. Specifically, plaintiff's treating physician, Francyne O. Anderson, has determined that plaintiff is unable even to perform sedentary job functions, but the physician who conducted the independent medical exam at Continental's request, Dr. Montague

[1]All references to the relevant administrative record are in the form "CCC" followed by the page number.

Blundon, reached the opposite conclusion. Thus, the case essentially turns on the credibility of these physicians.

On summary judgment, the Court may not make credibility determinations or weigh evidence. Anderson, 477 U.S. at 249. Rather, the Court is only to determine whether there is any issue that warrants the expenditure of time and resources during a trial on the merits. Id. If so, then the Court may not grant summary judgment. Hence, if there is a genuine dispute of material fact as to whether plaintiff is totally disabled as to any occupation, summary judgment under Rule 56(c) would be an improper vehicle for resolution of this case. Having concluded that the Court's earlier decision to deny summary judgment in Continental's favor was therefore correct, the motion for reconsideration will be denied.

Federal Rule of Civil Procedure 52, however, establishes a procedure through which the Court may make findings of fact on disputed issues before ruling on the legal merits of a case. See Neumann v. Prudential Ins. Co. of Am., 367 F. Supp. 2d 969, 980 (E.D. Va. 2005) (resolving denial of benefit claim under ERISA pursuant to Rule 52 because disputed material issues of fact precluded summary judgment under Rule 56(c)). In essence, Rule 52 authorizes a bench trial based on the evidence submitted by the parties to the Court. See id. Where, as here, summary judgment under Rule 56(c) is unavailable due to the presence of a genuine and material factual dispute, the Court may instead utilize Rule 52. Id. at 977-78. Resolution under Rule 52 is common in the ERISA context because a court's review of a plan administrator's decision to deny benefits is by its nature a densely factual, and hotly contested, undertaking. See id. Accordingly, the Court will proceed under Rule 52.

At this juncture, neither party contests the Court's previous decision to apply the de novo

standard of review rather than the more deferential arbitrary and capricious standard of review. Hence, the Court's task is to undertake a comprehensive review of the administrative record to determine whether plaintiff is totally disabled within the meaning of the plan. The Court must determine this issue as if it had never been reached by Continental, and Continental's findings are entitled to no judicial deference. United States v. George, 971 F.2d 1113, 1118 (4th Cir. 1992). Under "arbitrary and capricious" or "abuse of discretion" review, the Court would only inquire whether Continental's decision to terminate plaintiff's benefits was *reasonable,* but the de novo standard compels the Court to consider whether Continental's decision to terminate benefits was *correct*. See Ham v. AIG Life Ins. Co., 182 F. Supp. 2d 39, 43 & n.3 (D.D.C. 2003). The administrative record here contains evidence in support of the conclusion that plaintiff is not totally disabled, but it also contains evidence to the contrary. The findings of Dr. Anderson and Dr. Blundon are in conflict.

The Supreme Court has held that a plan administrator is not required automatically to defer to the conclusions of the treating physician. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825, 829 (2003). Black & Decker considered the "treating physician rule"[2] in the context of a benefits plan that warranted "arbitrary and capricious" or "abuse of discretion" review. Viewed against that backdrop, Black & Decker's holding is unremarkable: a deferential standard of review allows the plan administrator to reach a conclusion that may technically be

[2]Specifically, this rule -- which still applies in the black lung and Social Security Act contexts, see Black & Decker, 538 U.S. at 829 -- assigns special deference to the opinions of the treating physician and provides that those opinions "may only be disregarded for clear and convincing reasons based on substantial evidence in the record." Lamantia v. Voluntary Plan Administrators, Inc., 401 F.3d 1114, 1121 (9th Cir. 2005) (citing Regula v. Delta Family Care Disability Survivorship Plan, 266 F.3d 1130, 1140 (9th Cir. 2001), vacated, 539 U.S. 901 (2003)).

incorrect so long as it is reasonably supported by the administrative record. Put another way, if the medical evidence is close and supports both conclusions, then judicial deference would support the plan administrator's decision to deny the plaintiff's benefits. The ability to choose among conflicting evidence is, essentially, a natural outgrowth of the discretion that the plan affords to the plan administrator. Black & Decker may make less sense when applied to a case in which the court is reviewing the plan administrator's decision de novo, because the plan does not give discretion to the plan administrator. Nevertheless, Black & Decker speaks broadly and appears to bar entirely the "treating physician rule" in the ERISA context. See 538 U.S. at 831-33; see also Eastover Mining Co. v. Williams, 338 F.3d 501, 510 (6th Cir. 2003) (recognizing that Black & Decker's language questions the "treating physician rule itself"). Thus, this Court will not defer to Dr. Anderson's conclusions simply because she is plaintiff's treating physician, just as the plan administrator was not required to do so under Black & Decker. The findings of Dr. Anderson and Dr. Blundon will be given equal weight unless there is some reason on the merits why the findings of one physician are less credible than those of the other.

The Court is not persuaded by Dr. Anderson's findings. During the short-term benefit phase, Dr. Anderson specifically stated that plaintiff "would have to be retrained in an entire [sic] different occupation" if he were to return to work. CCC000145. This statement supports an inference that, although plaintiff could no longer perform his own occupation, he could perform other, less-physically-exerting occupations. Dr. Anderson explicitly recognized the possibility of re-employment in an alternate capacity despite the nature of plaintiff's injuries. In a subsequent report, Dr. Anderson did not say that plaintiff could not work or was totally disabled. See CCC000141. Although Dr. Anderson later recanted her assessment, she provided no objective

medical evidence for doing so. See CCC000101; see also CCC000099. Instead, she merely claimed that she was previously mistaken, without directing Continental to any new or pre-existing medical evidence to support her new conclusion. Nor did Dr. Anderson ever intimate that an intervening change in plaintiff's condition had rendered him totally disabled.[3] The inference is that her assessment was based only on plaintiff's subjective claims of discomfort, which, standing alone, are not sufficient. See Neumann, 367 F. Supp. 2d at 975.

An unexplained claim of mistake, without objective proof that the new finding is correct and the previous finding is incorrect, serves only to cast doubt on the integrity of Dr. Anderson's medical analysis. This assessment is not an "arbitrary refus[al] to credit . . . [the treating physician's] credible" findings. See Black & Decker, 538 U.S. at 834. To the contrary, it is actually a determination *based upon* the treating physician's representations. This is not a situation in which Dr. Anderson never meant to indicate that plaintiff could work in a sedentary capacity. Rather, when Dr. Anderson made that assessment, she did so willfully and presumably based on a review of the relevant facts. Now, however, Dr. Anderson has stated that her prior medical conclusions were based on an effort "to accommodate his [plaintiff's] return to work." CCC000101. This suggests that Dr. Anderson manipulated her medical conclusions to accommodate plaintiff's request, or that, at the very least, those conclusions were influenced by her sympathy for plaintiff. Hence, the credibility of Dr. Anderson's findings is questionable.

On the other hand, the Court can conceive of no reason to doubt the credibility of Dr.

---

[3]Although Dr. Anderson had previously described plaintiff as "totally disabled," the record does not support the conclusion that she found him to be "totally disabled" under the plan's *long-term* definition. Indeed, her assessment that plaintiff could return to work after being retrained in a new capacity is included in the same document as her use of the phrase "totally disabled," CCC000145, but is fundamentally inconsistent with total disability.

Blundon's findings.[4] Dr. Blundon personally examined plaintiff and, based on his medical analysis of plaintiff's objective condition during the orthopedic examination, as well as plaintiff's medical records, concluded that plaintiff is not totally disabled. See CCC000118. Specifically, Dr. Blundon found that although plaintiff walks with a "slightly unsteady gait," he does not use a cane or a walker. Id. Dr. Blundon also determined that plaintiff has an unlimited range of motion in the lumbar spine region, and retains "full range of motion of his hips, knees, and ankles." Id. Moreover, the MRI results conclusively showed that plaintiff was not suffering from a "ruptured disc" -- although there was evidence of a "protruding disc," there was no evidence of a "true rupture." Id. In fact, plaintiff exhibited only "minimal residual dysfunction." Id. Dr. Blundon stated that he could not determine how Dr. Anderson reached her medical conclusions, because they were wholly unsupported by the results of the MRI. See id. Ultimately, plaintiff's medical records, combined with his performance during Dr. Blundon's independent medical examination, led Dr. Blundon to conclude that plaintiff can not only work in a sedentary or "light duty" capacity, but may even do so on a full-time basis. Id. at 118-19.

Continental gave Dr. Anderson an opportunity to refute the results of Dr. Blundon's report, and also provided her with a copy of that report, explicitly asking that she explain any disagreement with Dr. Blundon's conclusions and provide objective medical evidence to support her disagreement. CCC000115. Presumably, then, Dr. Anderson should have, at the very least,

---

[4]Plaintiff correctly submits that Dr. Blundon may have had an incentive to conclude that plaintiff was not totally disabled, because he was hired and paid by Continental. Pl.'s Mem. Opp'n Summ. J. at 4; Black & Decker, 538 U.S. at 832. But the same can be said of Dr. Anderson: her capacity as plaintiff's treating physician supports an inference of bias in favor of plaintiff and may have influenced her conclusion that plaintiff is totally disabled. See Black & Decker, 538 U.S. at 832. The Court takes into account that each physician may tend to favor the party with whom he or she is associated.

explained why her conclusion was more viable than Dr. Blundon's -- that is, Dr. Anderson should have either detailed her own analysis or identified missteps in Dr. Blundon's analysis. Yet, Dr. Anderson did nothing more than state that she did not agree; she never explained her analysis or defended her conclusions. CCC000115; see also CCC000112; CCC000114; CCC000124. Dr. Anderson's refusal to provide the objective evidence requested by Continental tends to cast a further shadow of doubt upon her medical conclusions. See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 878 (9th Cir. 2004).

The opinions of other professionals who have assisted plaintiff in his recovery also support Continental's position and the Court's conclusion. Although plaintiff's physical therapist, David Carrington, never expressed an opinion as to whether plaintiff could perform sedentary job functions, Mr. Carrington has indicated that plaintiff's condition has improved over time. See CCC000077; see also CCC000058. The medical report of Dr. Azzam -- a neurologist to whom plaintiff was referred by Dr. Anderson, not Dr. Blundon -- likewise contains nothing so remarkable as to support a conclusion that plaintiff may not be employed in any capacity. See CCC000067. In sum, the evidence in support of plaintiff's claim of total disability is scant and questionable. The evidence supporting the conclusion that plaintiff can perform some form of sedentary job function is, on the other hand, somewhat more robust and, more importantly, free from doubt as to its credibility. Thus, the Court is persuaded by Dr. Blundon's report, and finds that plaintiff is not totally disabled under the definition of Continental's long-term benefits coverage.[5] Accordingly, Continental did not err in denying plaintiff's long-term benefits.

---

[5]Continental determined that, based on the reports of Dr. Blundon and Dr. Anderson, as well as plaintiff's age, education, and experience, plaintiff could work as a Night Auditor, Telephone Solicitor, Customer Service Representative, or Surveillance System Monitor. See

**CONCLUSION**

For the foregoing reasons, Continental's motion for reconsideration is denied. The Court finds, however, that plaintiff is not totally disabled within the meaning of the long-term benefits section of Continental's plan. Accordingly, judgment will be entered for Continental under Fed. R. Civ. P. 52 and plaintiff's action is dismissed. A separate order has been issued on this date.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated: December 22, 2005

Copies to:

Robert Joel Zakroff
ZAKROFF & ASSOCIATES, P.C.
4337 Montgomery Avenue
Bethesda, MD 20814
(301) 986-5770
Fax: (301) 986-4119
Email: zakrofflaw@verizon.net
*Counsel for plaintiff*

Michael R. McCann
FUNK & BOLTON, P.A.
36 South Charles Street
Baltimore, MD 21201-3111

---

CCC000104-05; CCC000163. Plaintiff is a high school graduate with a history of unemployment, and has only been employed previously as a Data Control Specialist (making subway parts), Construction Worker, and Post Office Clerk. See CCC000156; see also CCC000163. Plaintiff argues that he is thus not "qualified by education or experience," and has not "become[so] qualified," for any of the positions identified by Continental and, accordingly, he is "totally disabled" within the meaning of the plan. See CCC000109. The Court has reviewed the descriptions of those jobs in the Dictionary of Occupational Titles and concludes that any additional training or education that plaintiff might need in order to satisfactorily perform those jobs would be minimal. In addition, such training or education would more than likely be provided to plaintiff by his new employer during the introductory phase of employment.

(410) 659-7700
Fax: (410) 659-7773
Email: mmccann@fblaw.com

*Counsel for defendant*